## * * § 362 INFORMATION COVER SHEET * *

| | | |
|---|---|---|
| Irwin and Cleta Bomba | 10-17047-lbr | |
| **DEBTOR** | Case No: | MOTION #: |
| IndyMac Bank, FSB | CHAPTER: 7 | |
| **MOVANT** | | |

**_Certification of Attempt to Resolve the Matter Without Court Action:_**

*Moving counsel hereby certifies that pursuant to the requirements of LR 4001(a)(2), an attempt has been made to resolve the matter without court action, but movant has been unable to do so.*

*Date:* 05/07/10      *Signature:* /s/Michael R. Brooks, Esq.

*Attorney for Movant*

PROPERTY INVOLVED IN THIS MOTION: 948 San Eduardo Ave., Henderson, NV 89015
NOTICE SERVED ON: Debtor(s) ✓ ; Debtor's counsel ✓ ; Trustee ✓ ;
DATE OF SERVICE: 05/07/10

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st $753,329.80 | 1st _____ |
| 2nd _____ | 2nd _____ |
| 3rd _____ | 3rd _____ |
| 4th _____ | 4th _____ |
| Other: _____ | Other: _____ |
| Total Encumbrances: $753,329.80 | Total Encumbrances: _____ |
| APPRAISAL of OPINION as to VALUE: | APPRAISAL of OPINION as to VALUE: |
| $491,000.00 | |

| TERMS of MOVANT'S CONTRACT with the DEBTOR(S):: | DEBTOR'S OFFER of "ADEQUATE PROTECTION"for MOVANT . |
|---|---|
| Amount of Note: $765,100.00 | . |
| Interest Rate: ADJ | . |
| Duration: 30 Years | . |
| Payment per Month: $3,597.78 | . |
| Date of Default: 08/09 | . |
| Amount in Arrears: $34,470.07 | . |
| Date of Notice of Default: | . |
| SPECIAL CIRCUMSTANCES: | SPECIAL CIRCUMSTANCES: |
| SUBMITTED BY: /s/Michael R. Brooks, Esq. | SUBMITTED BY: _____ |
| Brooks Bauer LLP | SIGNATURE: _____ |

Transaction Report

Send
Transaction(s) completed

| No. | TX Date/Time | Destination | Duration | P.# | Result | Mode |
|-----|--------------|-------------|----------|-----|--------|------|
| 522 | MAY-04  15:00 | 7023821169 | 0'00'29" | 002 | OK | N  ECM |

# BROOKS ❦ BAUER LLP

## ATTORNEYS AT LAW

Nevada Office
Bank of America Plaza
300 S. 4th Street, Suite 815
Las Vegas, Nevada 89101-6014
702.851.1191
702.851.1198 (F)

California Office
Main Street Plaza
2677 N. Main Street, Suite 930
Santa Ana, California 92705-6632
714.558.1961
714.564.9302 (F)

May 4, 2010

**(VIA FAX (702) 382-1169)**

Zachariah Larson, Esq.
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

| Re: Debtor(s) | : | Bomba |
|---------------|---|-------|
| Bk. No. | : | BK 10-17047-lbr |
| Property | : | 948 San Eduardo Avenue, Henderson, Nevada 89002 |

Dear Zach:

This law firm represents the interests of IndyMac bank, FSB with regard to the instant Chapter 7 bankruptcy filed by Irwin and Cleta Bomba as Bankruptcy Case Number 10-17047-lbr.

IndyMac alleged grounds that constitute the basis for filing a Motion for Relief from the Automatic Stay against your client. Specifically, IndyMac makes the following allegations against your client:

- Failure to make payments to IndyMac for the months of August 2009 through May 2010. The total amount to bring the loan current through the date of this letter $35,974.44
- Voluntary Surrender..

This letter is written pursuant to LR 4001(a)(3) and is conveyed in a good faith attempt to resolve the allegations raised by my client before filing a Motion For Relief From Automatic Stay. If your client would like to attempt to resolve this matter without court action, please contact my office within two (2) business days of the date of this letter at the address or phone number contained above. If this law firm does not receive a response to this letter within that time, I must assume that your client has no desire

# BROOKS ✠ BAUER LLP

## ATTORNEYS AT LAW

Nevada Office
Bank of America Plaza
300 S. 4th Street, Suite 815
Las Vegas, Nevada 89101-6014
702.851.1191
702.851.1198  (F)

California Office
Main Street Plaza
2677 N. Main Street, Suite 930
Santa Ana, California  92705-6632
714.558.1961
714.564.9302  (F)

May 4, 2010

**(VIA FAX (702) 382-1169)**

Zachariah Larson, Esq.
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada  89101

| Re: Debtor(s) | : | Bomba |
| Bk. No. | : | BK 10-17047-lbr |
| Property | : | 948 San Eduardo Avenue, Henderson, Nevada 89002 |

Dear Zach:

This law firm represents the interests of IndyMac bank, FSB with regard to the instant Chapter 7 bankruptcy filed by Irwin and Cleta Bomba as Bankruptcy Case Number 10-17047-lbr.

IndyMac alleged grounds that constitute the basis for filing a Motion for Relief from the Automatic Stay against your client.   Specifically, IndyMac makes the following allegations against your client:

-       Failure to make payments to IndyMac for the months of August 2009 through May 2010.  The total amount to bring the loan current through the date of this letter $35,974.44
-       Voluntary Surrender..

This letter is written pursuant to LR 4001(a)(3) and is conveyed in a good faith attempt to resolve the allegations raised by my client before filing a Motion For Relief From Automatic Stay.  If your client would like to attempt to resolve this matter without court action, please contact my office within two (2) business days of the date of this letter at the address or phone number contained above.  If this law firm does not receive a response to this letter within that time, I must assume that your client has no desire

May 4, 2010
Bomba
Page 2

to resolve the allegations raised by my client without court action.  Consequently, upon
the expiration of the stated two business days, my client will immediately file a Motion
for Relief from Automatic Stay in the Bankruptcy Court.

Very truly yours,
BROOKS BAUER LLP

Jill M. Sallade
Paralegal

1  Michael R. Brooks, Esq.
   Nevada Bar No. 7287
2  Rebecca P. Kern, Esq.
   Nevada Bar No. 9079
3  BROOKS BAUER LLP
   300 S. 4th Street, Suite 815
4  Las Vegas, Nevada 89101
   (702) 851-1191
5  Attorneys for *IndyMac bank, FSB*

6                    **UNITED STATES BANKRUPTCY COURT**

7                         **DISTRICT OF NEVADA**

8

9  In Re:                              ) Case No. 10-17047-lbr
                                       ) Chapter  7
10                                     )
                                       )
11  IRWIN LEE BOMBA,                   ) Date:  June 7, 2010
    CLETA LOUISE BOMBA,                ) Time:  10:00 a.m.
12                                     )
                                       )
13                       Debtors.      )
                                       )
14

15              **MOTION FOR RELIEF FROM AUTOMATIC STAY**

16        Secured Creditor, IndyMac bank, FSB, by and through their attorney of record MICHAEL

17  R. BROOKS, ESQ., of the law Firm of BROOKS BAUER LLP, hereby moves this Court, for an

18  Order Terminating the Automatic Stay pursuant to §362 of the Bankruptcy Code and Bankruptcy

19  Rule 4001, for relief from the Automatic Stay.  In support of its Motion, Secured Creditor

20  represents as follows:

21        1.     Debtors filed a Petition for Relief pursuant to Chapter 7 of the Bankruptcy Code

22  April 21, 2010.

23        2.     Secured Creditor is the payee of a Promissory Note dated November 30, 2007, in

24  the principal amount of $765,100.00 which is secured by the Deed of Trust, true and correct copy

25  of which is attached hereto as Exhibit "A" and "B" respectively, recorded in first position against

26  real property of the estate located at 948 San Eduardo Avenue, Henderson, Nevada 89015.

27  (the "Subject Real Property").

28  / / /

BROOKS BAUER LLP
300 S. FOURTH STREET, SUITE 815, LAS VEGAS, NV 89101
TELEPHONE: (702) 851-1191 FAX: (702) 851-1198

3.    The Debtors defaulted in the payment obligations under the Note regarding the Mortgage. The Debtors now owe the payments and late charges that accrued from August 2009, and each payment due thereafter. A true and correct copy of the §362 Information Sheet is attached the "cover page" and incorporated by reference.

4.    The outstanding principal amount due and owing under the Note and Deed of Trust is $753,329.80.

The outstanding arrearages on the loan are as follows:

| | |
|---|---|
| 9 regular monthly payments at $3,597.78 each (August 2009 through May 2010) | $ 32,380.02 |
| Accrued late charges | $ 1,565.05 |
| Attorney Fees and Costs | $   525.00 |
| Total delinquencies | $34,470.07 |

5.    The Subject Real Property is valued at $491,000.00 pursuant to Debtors' schedule "A" attached hereto and made and part thereof as Exhibit "C". There are liens and encumbrances on the Subject Real Property in the amount of $753,329.00 pursuant to Debtors' Schedule D attached hereto and made apart thereof as Exhibit "D". The Court is asked to consider as admissions the statements made by Debtors under penalty of perjury concerning Secured Creditor's claims and the value of the Subject Real Property. Further, the Debtors intention is to surrender the subject property pursuant to the Debtors Schedule D attached hereto and made a part thereof as Exhibit "E".

6.    Upon information and belief, Secured Creditor alleges that it is entitled to relief from the automatic stay for the following reasons:

7.    The liens and encumbrances total $753,329.00 and there will be sale costs in the approximate amount of eight percent (8%) of the value of the Subject Real Property, or approximately $60,266.32. The value of the Subject Real Property is $491,000.00.

By reason thereof, good cause exists, for this Court to grant Secured Creditor relief from stay as provided by Section 362(d)(1) of the Bankruptcy Code.

BROOKS BAUER LLP
300 S. FOURTH STREET, SUITE 815, LAS VEGAS, NV 89101
TELEPHONE: (702) 851-1191   FAX: (702) 851-1198

P:\Bankruptcy Forms\BK Real Property Pleadings\Bomba Motion.docx

WHEREFORE, Secured Creditor respectfully prays that this Court grant relief from the automatic stay and enter an order as follows:

1.    Relief from stay allowing Secured Creditor, its successors or assigns, to proceed under applicable non-bankruptcy law to enforce its remedies, including, but not limited to, foreclosure upon, obtaining possession of, and selling the Subject Real Property;

2.    That Secured Creditor be entitled to seek post-petition attorney's fees in accordance with the terms and conditions of the Note and Deed of Trust and applicable law;

3.    In the alternative, if relief from stay is not granted, that the Debtor be required to adequately protect Secured Creditor; and

4.    For such other, and further remedies as the Court deems applicable and just.

DATED this 7th day of May, 2010.

By: /s/Michael R. Brooks, Esq.
Michael R. Brooks, Esq., #7287
Rebecca P. Kern, Esq., #9079
300 S. 4th St., Suite 815
Las Vegas, Nevada 89101

BROOKS BAUER LLP
300 S. FOURTH STREET, SUITE 815, LAS VEGAS, NV 89101
TELEPHONE: (702) 851-1191   FAX: (702) 851-1198

P:\Bankruptcy Forms\BK Real Property Pleadings\Bomba Motion.docx

# Exhibit A

# ADJUSTABLE   RATE   NOTE
(1 Month LIBOR Payment and Rate Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THIS NOTE.**

November 30, 2007                  PASADENA                      California
    [Date]                          [City]                         [State]

948 SAN EDUARDO AVENUE
HENDERSON, NV 89015

[Property   Address]

*This is to certify that this is a true and correct copy of the original hereof*
*Fidelity National Title Escrow*

## 1.   BORROWER'S   PROMISE   TO   PAY

In return for a loan that I have received, I promise to pay U.S. $ 765,100.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
INDYMAC BANK, F. S. B.,
a federally chartered savings bank

I will make all payments under this Note in the form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST

### (A) Construction & Permanent Phases

This Note, as amended by the attached Residential Construction Loan Addendum Amending Note (the "Addendum"), represents both a construction/home improvement loan and a permanent mortgage loan. During the Construction Period of the loan, the Note Holder will advance funds in accordance with the Residential Construction Loan Agreement. The "Construction Period" is defined as the period beginning on the date of the Note and ending on the first day of the month preceding the due date of the first monthly payment of principal and interest stated in the Note ("Permanent Loan Commencement Date") if Completion (as defined in the Residential Construction Loan Agreement) has occurred before that date in accordance with the Residential Construction Loan Agreement. If Completion has not occurred by that date, I will be in default under the Addendum and under this Note. If Completion has occurred prior to the Permanent Loan Commencement Date, then the loan evidenced by this Note will automatically become a permanent mortgage loan on the Permanent Loan Commencement Date, and the provisions of the Addendum will cease to be in effect and all terms and conditions of the loan will be as set forth in this Note on the Permanent Loan Commencement Date.

### (B) Interest Rate

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest beginning on the Permanent Loan Commencement Date at the Initial Interest Rate. The "Initial Interest Rate" will be calculated by adding the Index described in Section 2(E) of this Note that is most recently available as of the day that is 15 days prior to the Permanent Loan Commencement Date, to the Margin that is described in Section 2(F), except that the Initial Interest Rate may not be more than the Maximum Rate shown in Section 2(D) of this Note. The interest rate I pay may change.

The interest rate required by Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

Indymac  Bank
MULTISTATE   1 MONTH LIBOR ADJUSTABLE   RATE NOTE

8480926 (2004)

Page 1 of 5
MAP Mortgage Solutions, Inc

Form HCL 1022
04/06

**(C) Interest Rate Change Dates**

The interest rate I will pay may change on the   1st   day of        January        ,   2009   , and on that day every month thereafter. Each date on which my interest rate could change  is called an "Interest Rate Change Date." The new rate of interest  will become effective on each Interest Rate Change Date.

**(D) Interest Rate Limit**

My interest rate will never be greater than        12.950%.

**(E) Index**

The Index is the average of interbank offered rates for one-month U.S. dollar-denominated deposits  in the London market ("LIBOR") as published  in *The Wall Street Journal.*  The most recent Index figure available as the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose  a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(F) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding Two and Three Eighths                               percentage  point(s) (        2.375 %) (the "Margin") to the Current Index. Subject to the limit stated  in Section 2(D) above,  the result of this addition will be my new interest rate until the next Interest Rate Change Date.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making payments  every month.

I will make my monthly payments on the   1st   day of each month beginning  on        January 1    .   2009    . I will make these, payments  every month  until  I have paid all the principal and interest and any other charges described below that I may owe under this Note. Each monthly  payment  will be applied  as of its scheduled  due date  and will be applied  to interest before principal. If on     December 1, 2038   , I still owe amounts under this Note, I will pay these amounts  in full on that date, which is called the "Maturity Date."

I will make my monthly payments  at  155 NORTH LAKE AVENUE
PASADENA, CA 91101                                                                 or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Following  the Permanent Loan Commencement Date, each of my initial monthly  payments  will be in the amount calculated as follows (the "Initial Payment Amount"). After determining  the Initial Payment Amount).  After determining  the Initial Payment Amount, the Note Holder will determine the amount  of the monthly  payment  that would be sufficient  to repay the unpaid principal that  I am expected  to owe at the Permanent Loan Commencement Date in full on the maturity date at my Initial Interest Rate in substantially  equal payments. My Initial Payment Amount will change  in accordance  with Sections  3(C) and 3(D) of this Note.

**(C) Payment Change Dates**

My monthly payment  may change  as required by Section  3(D) below beginning  on the   1st   day of        January        , 2010             , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly  payment  also will change  at any time Section 3(F) or 3(G) below requires  me to pay a different monthly  payment.

I will pay the amount of my new monthly  payment  each month beginning  on each Payment Change  Date or as provided in Section  3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

Before each Payment  Change  Date, the Note Holder will calculate  the amount  of the monthly  payment  that would be sufficient  to repay the unpaid principal that  I am expected  to owe at the Payment Change  Date in Full on the Maturity  Date in substantially  equal  installments  at the interest rate effective during the month preceding  the Payment Change  Date. The result of this calculation  is called the "Full Payment."  Unless  Section  3(F) or 3(G) below  requires  me to pay a different amount,  my new  monthly  payment  will be in the amount  of the Full Payment,  except  that my new monthly  payment  will be limited  to an amount  that will not be more than 7.5% greater  or less  than the amount  of my last monthly  payment  due before  the Payment Change  Date.

### (E) Additions to My Unpaid Principal

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder also will add interest on the amount of this difference to my unpaid principal each month. The interest rate on the interest added to principal will be the rate required by Section 2 above.

### (F) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid principal can never exceed a maximum amount equal to one hundred Ten

percent ( 110.000%) of the principal amount I originally borrowed. Because of my paying only limited monthly payments, the addition of unpaid interest to my unpaid principal under Section 3(E) above could cause my unpaid principal to exceed that maximum amount when interest rates increase. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount that would be sufficient to repay my then unpaid principal in full on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month.

### (G) Required Full Payment

On the 5th Payment Change Date and on each succeeding 5th Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. I also will begin paying the Full Payment as my monthly payment on the final Payment Change Date.

### 4.  NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under this Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my prepayment to the accrued and unpaid interest on the prepayment before applying my prepayment to reduce the principal amount of this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to these changes. My partial prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

### 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceed permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

### 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

#### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of my monthly payment by the end of          15          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be          5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

#### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees

### 8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address

### 9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

### 10.   WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 11.   UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law. Lender also shall not exercise this option if:(a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee, and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
                                -Borrower
IRWIN L BOMBA

_____ (Seal)
                                -Borrower
CLETA BOMBA

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

*[Sign Original Only]*

# Exhibit B

**20071207-0004310**

Fee: $41.00
N/C Fee: $25.00

12/07/2007        15:17:32
T20070212851
Requestor:
    TICOR TITLE OF NEVADA INC

Debbie Conway                    SOL
Clark County Recorder    Pgs: 28

Assessor's Parcel Number:
179-33-514-002
Return To:
INDYMAC BANK, F. S. B.

3465 EAST FOOTHILL BLVD./ATTN: DOCUMENT
MANAGEMENT
PASADENA, CA 91107
Prepared By:
INDYMAC BANK, F. S. B.

3465 EAST FOOTHILL BLVD.

PASADENA, CA 91107

Recording Requested By:
INDYMAC BANK, F. S. B.

22334-LT/07530137-JA1

[Space Above This Line For Recording Data]

# DEED OF TRUST

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated                    November 30, 2007                    ,
together with all Riders to this document.
**(B) "Borrower"** is
IRWIN L BOMBA AND CLETA BOMBA HUSBAND AND WIFE

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is                                        INDYMAC BANK, F. S. B.
Lender is a a federally chartered savings bank
organized and existing under the laws of            THE UNITED STATES OF AMERICA            .

NEVADA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3029   1/01
Wolters Kluwer Financial Services
VMP ® -6(NV) (0507).01
Page 1 of 15            Initials
DDS-NV2

Lender's address is   155 NORTH LAKE AVENUE

PASADENA, CA 91101

Lender is the beneficiary under this Security Instrument.

**(D) "Trustee"** is

FIDELITY NATIONAL TITLE

**(E) "Note"** means the promissory note signed by Borrower and dated                    November 30, 2007

The Note states that Borrower owes Lender

Seven Hundred Sixty-Five Thousand One Hundred and 00/100                                                                Dollars

(U.S. $ 765,100.00                          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than                    December 1, 2038

**(F) "Property"** means the property that is described below under the heading  "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced  by the Note, plus interest, any prepayment  charges and late charges due
under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following  Riders are to
be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
|---|---|---|
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |
| | | Construction  Rider |

**(I) "Applicable Law"** means all controlling  applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable  judicial
opinions.

**(J) "Community Association  Dues, Fees, and Assessments"**  means all dues, fees, assessments  and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association  or similar
organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction  originated by check, draft, or
similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse  transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous  Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or
destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance  in
lieu of condemnation; or (iv) misrepresentations  of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting  Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled  amount due for (i) principal and interest  under the Note, plus
(ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor  legislation or regulation that governs the same subject matter. As used in this Security Instrument,
"RESPA" refers to all requirements and restrictions  that are imposed in regard to a "federally related mortgage loan"
even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

Initials

VMP ® -6(NV) (0507).01                          Page 2 of 15                          Form 3029  1/01
DDS-NV2

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

<table>
<tr><td></td><td>County</td><td>of</td><td>CLARK</td><td>:</td></tr>
<tr><td></td><td>[Type of Recording Jurisdiction]</td><td></td><td>[Name of Recording Jurisdiction]</td><td></td></tr>
</table>

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF, AS EXHIBIT'A'

Parcel ID Number: 179-33-514-002
which currently has the address of
948 SAN EDUARDO AVENUE

[Street]

HENDERSON                                                    [City], Nevada          89015          [Zip Code]

("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3.

Initials:

VMP ® -6(NV) (0507).01                    Page 3 of 15                    Form 3029   1/01
DDS-NV2

Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing.



Initials:

VMP ® -6(NV) (0507).01          Page 4 of 15          Form 3029 1/01
DDS-NV2

In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

Initials

VMP ® -6(NV) (0507).01                    Page 5 of 15                                    Form 3029   1/01
DDS-NV2

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

Initials:

Form 3029   1/01

VMP ® -6(NV) (0507).01                 Page 6 of 15
DDS-NV2

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.

Initials:

VMP ® -6(NV) (0507).01                    Page 7 of 15                    Form 3029   1/01
DDS-NV2

Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

VMP ® -6(NV) (0507).01                     Page 8 of 15                          Form 3029   1/01
DDS-NV2

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Initials

VMP ® -6(NV) (0507).01                          Page 9 of 15                          Form 3029  1/01
DDS-NV2

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials

VMP ® -6(NV) (0507).01          Page 10 of 15                    Form 3029  1/01
DDS-NV2

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.

escription: Clark,NV Document-Year.Date.DocID 2007.1207.4310 Page: 11 of 28
rder: fsdaf4sadf7 Comment:

There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: 

VMP ® -6(NV) (0507).01                Page 12 of 15                Form 3029   1/01
DDS-NV2

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Assumption Fee. If there is an assumption of this loan, Lender may charge an assumption fee of
U.S. $                       . (As per schedule of fees in effect at time of assumption.)

Initials:

VMP ® -6(NV) (0507).01                    Page 13 of 15                    Form 3029   1/01
DDS-NV2

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                                          -Borrower
                                            IRWIN L BOMBA

_____          _____ (Seal)
                                                          -Borrower
                                            CLETA BOMBA

_____ (Seal)        _____ (Seal)
                -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                -Borrower                                      -Borrower

VMP ® -6(NV) (0507).01             Page 14 of 15             Form 3029 1/01
DDS-NV2

STATE OF NEVADA

COUNTY OF CLARK

This instrument was acknowledged before me on NoV. 30, 2007                by

IRWIN L. BOMBA + CLETA BOMBA



CARL ROSS
Notary Public, State of Nevada
Appointment No. 04-93270-1
My Appt. Expires Dec 23, 2008

Carl Ross

Mail Tax Statements To:
IRWIN L BOMBA
1710 FRANKLIN CHASE TERRACE
HENDERSON, NV 89012

Initials:

Form 3029   1/01

VMP ® -6(NV) (0507).01                Page 15 of 15
DDS-NV2

## EXHIBIT A

Lot Thirty-Seven (37) in Block Two (2) of AMENDED PLAT OF A PORTION OF BLACK
MOUNTAIN RANCH – UNIT 3, (Book 71, Page 9) and a PORTION OF RESUBDIVISION MAP OF
MISSION HILLS SUBDIVISION, (Book 33, Page 1), as shown by map thereof on file in Book 90 of
Plats, Page 57, in the Office of the County Recorder, Clark County, Nevada.

TOGETHER WITH that portion of said land conveyed to the City of Henderson by that certain Deed
recorded December 6, 1995 in Book 951206 as Document No. 00909, Official Records.

TOGETHER WITH that portion of said land conveyed to the City of Henderson by that certain Deed
recorded August 26, 2003 in Book 20030826 as Document No. 01324, Official Records.

Said land also known as Lot 37 as shown on that Record of Survey in File 132 of Surveys, Page 61 of
Official Records.

# ADJUSTABLE   RATE   RIDER
(1 Month Libor Payment and Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 30th day of        November        , 2007  ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of
Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the
"Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

INDYMAC BANK, F. S. B.

a federally chartered savings bank                                            (the "Lender") of
the same date and covering the Property described in the Security Instrument and located at:

948 SAN EDUARDO AVENUE
HENDERSON, NV 89015

[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST
RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE
AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE.
THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE
AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT
STATED IN THIS NOTE.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note contains the following provisions:

2.   INTEREST

(A) Construction and Permanent Phases.

This Note, as amended by the attached Residential Construction Loan Addendum
Amending Note (the "Addendum"), represents both a construction/home improvement loan and
a permanent mortgage loan. During the Construction Period of the loan, the Note Holder will
advance funds in accordance with the Residential Construction Loan Agreement. The
"Construction Period" is defined as the period beginning on the date of the Note and ending on
the first day of the month preceding the due date of the first monthly payment of principal and
interest stated in the Note ("Permanent Loan Commencement Date") if Completion (as defined
in the Residential Construction Loan Agreement) has occurred before that date in accordance
with the Residential Construction Loan Agreement. If Completion has not occurred by that date,
I will be in default under this Addendum and under the Note. If Completion has occurred prior to
the Permanent Loan Commencement Date, then the loan evidenced by the Note will
automatically become a permanent mortgage loan on the Permanent Loan Commencement
Date,

Indymac  Bank
CTP 1 Month LIBOR Adjustable Rate Rider - Multistate
                                         Page 1 of 5                              HCL 1023
8480934  (0604)                  VMP Mortgage Solutions, Inc.                     04/06

and the provisions of this Addendum will cease to be in effect and all terms and conditions of the loan will be as set forth in the Note on the Permanent Loan Commencement Date.

### (B) Interest Rate

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest beginning on the Permanent Loan Commencement Date at the Initial Interest Rate. The "Initial Interest Rate" will be calculated by adding the Index described in Section 2(E) of this Note that is most recently available as of the day that is 15 days prior to the Permanent Loan Commencement Date, to the Margin that is described in Section 2(F), except that the Initial Interest Rate may not be more than the Maximum Rate shown in Section 2(D) of this Note. The interest rate I pay may change.

The interest rate required by Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### (C) Interest Rate Change Dates

The interest rate I will pay may change on the first day of      January      ,  2009   , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

### (D) Interest Rate Limit

My interest rate will never be greater than      12.950%.

### (E) Index

The Index is the average of interbank offered rates for one-month U.S. dollar-denominated deposits in the London market ("LIBOR") as published in *The Wall Street Journal*. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (F) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding      Two and Three Eighths      percentage point(s) (     2.375 %)

(the "Margin") to the Current Index. Subject to the limit stated in Section 2(D) above, the result of this addition will be my new interest rate until the next Interest Rate Change Date.

## 3.   PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on January 1      ,  2009    .

I will make these payments every month until I have paid all the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on

December 1, 2038      .

HCL 1023
04/06

I still owe amounts under this Note, I will pay these amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at

155 NORTH LAKE AVENUE

PASADENA, CA 91101

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Following the Permanent Loan Commencement Date, each of my initial monthly payments will be in the amount calculated as follows (the "Initial Payment Amount"). After determining the Initial Interest Rate, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Permanent Loan Commencement Date in full on the maturity date at my Initial Interest Rate in substantially equal payments. My Initial Payment Amount will change in accordance with Sections 3(C) and 3(D) of this Note.

### (C) Payment Change Dates

My monthly payment may change as required by Section 3(D) below beginning on the 1st day of January , 2010 , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

### (D) Calculation of Monthly Payment Changes

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date.

The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new monthly payment will be in the amount of the Full Payment, except that my new monthly payment will be limited to an amount that will not be more than 7.5% greater or less than the amount of my last monthly payment due before the Payment Change Date.

### (E) Additions to My Unpaid Principal

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder also will add interest on the amount of this difference to my unpaid principal each month. The interest rate on the interest added to principal will be the rate required by Section 2 above.

8480934 (0604)                               Page 3 of 5

HCL 1023
04/06

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to one hundred
Ten                                  percent (    110.000%) (\$ 841,610.00          )
of the principal amount I originally borrowed. Because of my paying only limited monthly
payments, the addition of unpaid interest to my unpaid principal under Section 3(E) above could
cause my unpaid principal to exceed that maximum amount when interest rates increase. In
that event, on the date that my paying my monthly payment would cause me to exceed that
limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount
that would be sufficient to repay my then unpaid principal in full on the Maturity Date in
substantially equal installments at the interest rate effective during the preceding month.

**(G) Required Full Payment**

On the 5th Payment Change Date and on each succeeding 5th Payment Change Date
thereafter, I will begin paying the Full Payment as my monthly payment until my monthly
payment changes again. I also will begin paying the Full Payment as my monthly payment on
the final Payment Change Date.

**B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section
18, "Interest in the Property" means any legal or beneficial interest in the Property, including,
but not limited to, those beneficial interests transferred in a bond for deed, contract for deed,
installment sales contract or escrow agreement, the intent of which is the transfer of title by
Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is
not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's
prior written consent, Lender may require immediate payment in full of all sums secured by this
Security Instrument. However, this option shall not be exercised by Lender if such exercise is
prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be
submitted to Lender information required by Lender to evaluate the intended transferee as if a
new loan were being made to the transferee; and (b) Lender reasonably determines that
Lender's security will not be impaired by the loan assumption and that the risk of a breach of
any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a
condition to Lender's consent to the loan assumption. Lender may also require the transferee to
sign an assumption agreement that is acceptable to Lender and that obligates the transferee to
keep all the promises and agreements made in the Note and in this Security Instrument.
Borrower will continue to be obligated under the Note and this Security Instrument unless
Lender releases Borrower in writing.

8480934 (0604)                          Page 4 of 5

HCL 1023
04/06

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
-Borrower
ÁRWIN L BOMBA

_____ (Seal)
-Borrower
CLETA BOMBA

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

8480934  (0604)                          Page 5 of 5

HCL 1023
04/06

TO BE RECORDED WITH THE SECURITY INSTRUMENT

Date: November 30, 2007

## RESIDENTIAL CONSTRUCTION LOAN RIDER WITH SECURITY AGREEMENT AND FINANCING STATEMENT (Nevada)

Words used in this Rider are defined below. Words in the singular mean and include the plural and vice versa.

"Agreement" means the Residential Construction Loan Agreement.

"Borrower" is IRWIN L BOMBA, CLETA BOMBA

"Borrower's Funds Account" means any and all construction loan accounts established pursuant to the Agreement and held by Lender and used to deposit additional funds provided by Borrower.

"Contractor" is

and its successors or assigns.

"Improvements" are the improvements made to a single family residence *or* new construction of a single family residence.

"Lender" is INDYMAC BANK, F. S. B.,

a federally chartered savings bank

and its successors or assigns.

"Loan" means the debt evidenced by the Note and all sums due under the Security Instrument and the Agreement.

"Loan Documents" means the Agreement, the Note, the Security Instrument, all other documents now or hereafter executed by borrower or any other person or party to evidence or securing the loan, and any and all renewals, reinstatements, extensions, amendments thereto or substitutes given therefor.

"Note" means the promissory note of even date signed by Borrower in favor of Lender.

"Property" means the property commonly known as
948 SAN EDUARDO AVENUE
HENDERSON, NV 89015

**IndyMac Bank, F.S. B.**
**Residential Construction Loan Rider to Security Instrument - Nevada**

| | | |
|---|---|---|
| | Page 1 of 6 | **HCL 911(NV)** |
| **8480431** (0402) | VMP Mortgage Solutions (800)521-7291 | **2/04** |
| DDS-DR5 | | |

"Security Instrument" means the Deed of Trust/Mortgage/Security Deed/Security Instrument of even date signed by Borrower in favor of Lender.

THIS RESIDENTIAL CONSTRUCTION LOAN RIDER shall be deemed to amend and supplement the Security Instrument of the same date given by the Borrower to secure Borrower's Note to Lender of the same date and covering the Property described in the Security Instrument.

AMENDED AND ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

1.   **Residential Construction Loan Agreement.** Borrower agrees to comply with the covenants and conditions of the Agreement between Borrower, Lender and Contractor, which is incorporated herein by this reference and made a part of this Security Instrument. The Agreement provides for the construction of certain Improvements on the Property. All advances made by Lender pursuant to the Agreement shall be an indebtedness of Borrower secured by this Security Instrument as amended, and such advances may be obligatory under the terms of the Agreement. The Security Instrument secures the payment of all sums and the performance of all covenants required by Lender in the Agreement. Upon the failure of Borrower to keep and perform all the covenants, conditions and agreements of the Agreement, the principal sum and all interest and other charges provided for in the loan documents and secured hereby shall, at the option of the Lender, become due and payable.

2.   **Security Instrument.** This Security Instrument is a "construction mortgage" securing an obligation incurred for the construction of Improvements on the Property including the acquisition cost of the Property, if any, and any notes issued in extension, renewal, or substitution thereof. Borrower affirms, acknowledges and warrants that prior to the recordation of this Security Instrument, as amended, in the appropriate Real Property Records of the State of Nevada, no Improvements contemplated by the Loan Agreement have been constructed, no work has been performed, and no materials have been ordered or delivered.

3.   **Future Advances.** This Security Instrument is governed by Nevada Revised Statutes Sections 106.300 to 106.400 and secures future advances as provided in such Sections. The maximum amount of principal (as defined in NRS Section 106.345) secured hereby (including disbursements that the Lender may, but shall not be obligated to, make under this Deed of Trust, the Loan Documents or any other document with respect thereto) shall not exceed Seven Hundred Sixty-Five Thousand One Hundred and 00/100                                                                                     Dollars
($ 765,100.00          ). This Deed of Trust shall be valid and have priority to the extent of the maximum amount secured hereby over all subsequent liens and encumbrances, including statutory liens, excepting solely taxes and assessments levied on the Property given priority by law.

4.   **Disbursements to Protect Security.** All sums disbursed by Lender prior to completion of the Improvements to protect the security of this Security Instrument, up to the principal amount of the Note and any future advances, shall be treated as disbursements pursuant to the Agreement. All such sums shall bear interest from the date of disbursement at the rate stated in the Note, unless the collection from Borrower of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate which may be collected from Borrower under applicable law and shall be payable upon notice from Lender to Borrower requesting payment therefor.

8480431 (0402)                                        Page 2 of 6
DDS-DR5

HCL 911(NV)
2/04

5.   **Assignment of Rights or Claims.** From time to time as Lender deems necessary to protect Lender's interest, Borrower shall, upon request of Lender, execute, acknowledge before a notary, and deliver to Lender, assignments of any and all rights or claims which relate to the construction on the Property.

6.   **Breach by Borrower.**

   a.   Upon the occurrence of a breach under any of the Loan Documents, Lender at its option, may (a) declare all sums owing under the Agreement, the Note and the other Loan Documents immediately due and payable; (b) disburse and incur such expenses to preserve the Property and Improvements as security, (c) terminate its commitment to lend and any obligation to make any further disbursements of the Loan; (d) set-off and apply, to the extent thereof and to the maximum extent permitted by law, any and all deposits, funds or assets at any time held and any and all indebtedness at any time owing by Lender to or for the credit or account of Borrower against the Loan; (e) exercise any and all rights and remedies afforded by the Security Instrument, the Agreement, the other Loan Documents, law, equity or otherwise; and (f) in its own name or in the name of Borrower, enter into possession of the Property, perform all work necessary to complete the construction of the Improvements substantially in accordance with the plans and specifications (as modified as deemed necessary by Lender), the Loan Documents, laws, and governmental requirements, and continue to employ any contractor or subcontractor pursuant to applicable contracts or otherwise. The remedies provided in this Paragraph shall be in addition to other remedies provided by law, equity, or the Loan Documents.

   b.   All costs and expenses paid or incurred by Lender pursuant to the foregoing subparagraph of this paragraph shall be deemed to be advanced to Borrower and shall be a part of the indebtedness evidenced by the Note and secured by the Security Instrument. At the option of Lender, such sums may be deducted from any advance thereafter becoming due.

   c.   Nothing herein contained shall be deemed to waive any right given to Lender pursuant to the applicable law relating to mechanic's and materialman's liens.

7.   **Termination of Agreement upon Amortization.** After the commencement of amortization of the Note, the terms of the Agreement (except to the extent Lender is indemnified therein) shall be null and void, and there shall be no claim or defense arising out of or in connection with the Agreement against the obligations of the Note and this Security Instrument.

8.   **Property.** The property covered by this Security Instrument includes the property described or referred to in this Security Instrument, together with the following, all of which are referred to as the "Property." The portion of the Property described below which constitutes real property is sometimes referred to as the "Real Property." The portion of the Property which constitutes personal property is sometimes referred to as the "Personal Property," listed as follows:

   Any and all buildings, improvements (provided in the Agreement or otherwise), and tenements now or hereafter erected on the Property; any and all heretofore and hereafter vacated alleys and streets abutting the Property, easements, rights, appurtenances, rents (subject however to any assignment of rents to Lender), leases, royalties, mineral, oil and gas rights and profits, water, water rights and water stock appurtenant to the Property (to the extent they are included in Borrower's fee simple title); any and all fixtures, machinery, equipment, building materials, appliances, and goods of every nature whatsoever now or hereafter located in, or on, or used, or intended to be used in connection with the Property and all replacements and accessions of them, including, but not limited to those for the purpose of supplying or

**8480431** (0402)                                        Page 3 of 6                                        **HCL 911(NV)**
DDS-DR5                                                                                                      **2/04**

distributing heating, cooling, electricity, gas, water, air and light; security and access control apparatus; plumbing and plumbing fixtures; refrigerating, cooking and laundry equipment; carpet, floor coverings and interior and exterior window treatments; furniture and cabinets; interior and exterior sprinkler plant and lawn maintenance equipment; fire prevention and extinguishing apparatus and equipment, water tanks, swimming pool, compressor, vacuum cleaning system, disposal, dishwasher, range, and oven, any shrubbery and landscaping; any and all plans and specifications for development of or construction of Improvements upon the Property; any and all contracts and subcontracts relating to the Property; any and all accounts, contract rights, instruments, documents, general intangibles, and chattel paper arising from or by virtue of any transactions related to the Property; any and all permits, licenses, franchises, certifications, and other rights and privileges obtained in connection with the Property; any and all products and proceeds arising from or by virtue of the sale, lease, or other disposition of any of the Property; any and all proceeds payable or to be payable under each policy of insurance relating to the Property; any and all proceeds arising from the taking of all or part of the Property for any public or quasi-public use under any law, or by right of eminent domain, or by private or other purchase in lieu thereof; all building permits, certificates of occupancy, certificates of compliance, any right to use utilities of any kind including water, sewage, drainage and any other utility rights, however arising whether private or public, present or future, including any reservation, permit, letter, certificate, license, order, contract or otherwise and any other permit, letter, certificate, license, order, contract or other document or approval received from or issued by any governmental entity, quasi-governmental entity common carrier, or public utility in any way relating to any part of the Property or the Improvements, fixtures and equipment thereon; all other interests of every kind and character which Borrower now has or at any time hereafter acquires in and to the Property, including all other items of property and rights described elsewhere in this Security Instrument.

The Personal Property also includes the Borrower's Funds Account, together with any interest accruing thereon and proceeds thereof.

9.    **Security Agreement and Financing Statement.** This Security Instrument shall be a security agreement granting Lender a first and prior security interest in all of Borrower's right, title and interest in, to and under the Personal Property, under and within the meaning of applicable statutes of this state, as well as a Mortgage and/or a Deed of Trust granting a lien upon and against the Real Property. In the event of any foreclosure sale all of the Real and Personal Property may, at the option of Lender, be sold as a whole or in any part. It shall not be necessary to have present at the place of such sale the Personal Property or any part thereof. Lender shall have all the rights, remedies and recourses with respect to the Personal Property afforded to a "Secured Party" by the applicable statutes of this state in addition to and not in limitation of the other rights and recourse afforded Lender under this Security Instrument. Borrower shall, upon demand, pay to Lender the amount of any and all expenses, including the fees and disbursements of Lender's legal counsel and of any experts and agents which Lender may incur in connection with: (i) the making and/or administration of this Security Instrument; (ii) the custody, preservation, use or operation of, or the sale of, collection from, or other realization upon any property, real and/or personal, described in this Security Instrument, (iii) the exercise or enforcement of any of the rights of Lender under this Security Instrument; or (iv) the failure by Borrower to perform or observe any of the provisions or covenants in this Security Instrument; or (v) any actions taken by Lender for any reason whatsoever in any case or proceeding under Chapter 7, 11, or 13 of the Bankruptcy Code or any successor statute thereto, including, but not limited to, action taken with respect to issues particular to federal bankruptcy law.

Description: Clark,NV Document-Year.Date.DocID 2007.1207.4310 Page: 25 of 28
Order: fsdaf4sadf7 Comment:

Lender may, at its election, at any time after the delivery of this Security Instrument, sign one or more copies of this Security Instrument in order that such copies may be used as a financing statement under the statutes of this state. Lender's signature need not be acknowledged, and is not necessary to the effectiveness hereof as a mortgage, a security agreement, or (unless otherwise required by applicable law) a financing statement.

**10. Completion.** Lender shall not be responsible for the completion of the Improvements, and shall not in any way be considered a guarantor or surety of performance by Borrower. In the event the Improvements are not completed according to the plans and specifications approved by Lender, and it is determined for whatever reason the Lender does not have a lien arising by or through Borrower, then Lender shall have a valid lien for its loan amount, less the amount reasonably necessary to complete the Improvements, or in such event Lender, at its option, shall have the right to complete the Improvements, and the lien shall be valid for the loan amount.

**11. Invalid Provisions.** If any provision of this Security Instrument is declared invalid, illegal, or unenforceable by a court of competent jurisdiction, then such invalid, illegal or unenforceable provision shall be severed from this Security Instrument and the remainder enforced as if such invalid, illegal or unenforceable provision is not a part of this Security Instrument.

**12. Address.**

The name and address of the Borrower/Debtor during construction of the Improvements is:
IRWIN L BOMBA, CLETA BOMBA

1710 FRANKLIN CHASE TERRACE
HENDERSON, NV 89012

The name and address of the Lender/Secured Party is:
INDYMAC BANK, F. S. B.,
a federally chartered savings bank
155 NORTH LAKE AVENUE
PASADENA, CA 91101

**13. Other Provisions.** The following notice is required by law:

IMPORTANT NOTICE: YOU ARE HEREBY NOTIFIED THAT ANY PERSON PERFORMING LABOR ON YOUR PROPERTY OR FURNISHING MATERIALS FOR THE CONSTRUCTION, REPAIR, OR IMPROVEMENT OF YOUR PROPERTY WILL BE ENTITLED TO A LIEN AGAINST YOUR PROPERTY IF HE IS NOT PAID IN FULL, EVEN THOUGH YOU MAY HAVE PAID THE FULL CONTRACT PRICE TO YOUR CONTRACTOR. THIS COULD RESULT IN YOUR PAYING FOR LABOR AND MATERIALS TWICE. THIS LIEN CAN BE ENFORCED BY THE SALE OF YOUR PROPERTY. TO AVOID THIS RESULT, YOU MAY DEMAND FROM YOUR CONTRACTOR LIEN WAIVERS FROM ALL PERSONS PERFORMING LABOR OR FURNISHING MATERIALS FOR THE WORK ON YOUR PROPERTY. YOU MAY WITHHOLD PAYMENT TO THE CONTRACTOR IN THE AMOUNT OF ANY UNPAID CLAIMS FOR LABOR OR MATERIALS. YOU ALSO HAVE THE RIGHT TO DEMAND FROM YOUR CONTRACTOR A COMPLETE LIST OF ALL LABORERS AND MATERIAL SUPPLIERS UNDER YOUR CONTRACT, AND THE RIGHT TO DETERMINE FROM THEM IF THEY HAVE BEEN PAID FOR LABOR PERFORMED AND MATERIALS FURNISHED.

HCL 911(NV)
2/04

8480431 (0402)              Page 5 of 6
DDS-DR5

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Residential Construction Loan Rider.

_____ (Seal)
IRWIN L BOMBA                                    - Borrower

_____ (Seal)
CLETA BOMBA                                      - Borrower

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                                 - Borrower

_____ (Seal)
                                                 - Borrower

_____ (Seal)
                                                 - Borrower

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                                 - Borrower

**ATTENTION OFFICIAL RECORDER OF INSTRUMENTS:** This instrument covers goods that are or are to become fixtures on the described Property herein and is to be filed for record in the County Recorder's records where mortgages on real estate are recorded. Additionally, this instrument should be appropriately indexed, not only as a mortgage but as a financing statement covering goods that are or are to become fixtures on the described Property herein. The mailing address of the Borrower (Debtor) and Lender (Secured Party) are set forth in this instrument.

———————————— [Please See Attached Acknowledgment(s)] ————————————

HCL 911(NV)
2/04

8480431 (0402)                      Page 6 of 6
DDS-DR5

**NEVADA SHORT-FORM INDIVIDUAL ACKNOWLEDGMENT** N.R.S. 240.166

State of Nevada

County of ___CLARK___ } ss.

This instrument was acknowledged before me on this

the __30ᵀᴴ__ day of __NOV.__ , __2007__, by

(Day)          (Month)          (Year)

(1) __IRWIN L. BOMBA__

Name of Signer

(2) and __CLETA BOMBA__

Name of Signer

CARL ROSS
Notary Public, State of Nevada
Appointment No. 04-93270-1
My Appt. Expires Dec 23, 2008

_Carl Ross_

Signature of Notary Public

---

──────────── **OPTIONAL** ────────────

Though the information in this section is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.

| RIGHT THUMBPRINT OF SIGNER #1 | RIGHT THUMBPRINT OF SIGNER #2 |
|---|---|
| Top of thumb here | Top of thumb here |

**Description of Attached Document**

Title or Type of Document: __RESIDENTIAL CONSTRUCTION LOAN RIDER__
__WITH SECURITY AGREEMENT + FINANCING STATEMENT__

Document Date: __Nov. 30, 2007__      Number of Pages: __6__

Signer(s) Other Than Named Above: _____

© 2000 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org    Prod. No. 5915        Reorder: Call Toll-Free 1-800-876-6827

# Exhibit C

B6A (Official Form 6A) (12/07)

In re    **IRWIN LEE BOMBA,**                                          Case No. _____
         **CLETA LOUISE BOMBA**

                                      Debtors
## SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a
cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for
the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W,"
"J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under
"Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and
Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity
claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or
if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| 948 SAN EDUARDO AVENUE, HENDERSON, NV 89002 | PRIMARY RESIDENCE | C | 491,000.00 | 753,329.00 |
| 1710 FRANKLIN CHASE TERRACE, HENDERSON, NV 89012 | INVESTMENT PROPERTY | J | 184,000.00 | 236,074.00 |
| TIMESHARE LOCATED AT PUEBLO BONITO EMERAL BAY AT MAZATLAN, MEXICO | INVESTMENT PROPERTY | C | Unknown | 800.00 |

|  |  |  |
|---|---|---|
| Sub-Total > | **675,000.00** | (Total of this page) |
| Total > | **675,000.00** | |

**0**   continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                                   Best Case Bankruptcy

**Exhibit D**

B6D (Official Form 6D) (12/07)

In re    **IRWIN LEE BOMBA,**                                                Case No. _____
         **CLETA LOUISE BOMBA**
_____
                        Debtors

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W | J/C | | | | | | |
| Account No. | | | | | TIMESHARE LOCATED AT PUEBLO BONITO EMERAL BAY AT MAZATLAN, MEXICO | | | | | |
| **EMERALD BAY HOA ATTN:  BANKRUPTCY DESK/MANAGING AGENT** | C | | | | | | | | | |
| | | | | | Value $          **Unknown** | | | | **800.00** | **Unknown** |
| Account No. **xxxxxxxxx0160** | | | | | Opened 11/30/07  Last Active  8/01/09 | | | | | |
| **ONEWEST BANK ATTN: BANKRUPTCY DESK/MANAGING AGENT 6900 BEATRICE DRIVE KALAMAZOO, MI 49009** | | | | J | FIRST MORTGAGE 948 SAN EDUARDO AVENUE, HENDERSON, NV 89002 | | | | | |
| | | | | | Value $          **491,000.00** | | | | **753,329.00** | **262,329.00** |
| Account No. **xxxxxx5209** | | | | | Opened 4/22/05  Last Active 6/01/09 | | | | | |
| **US BANK ATTN: BANKRUPTCY DEPT. / MANAGING AGENT PO BOX 5227 CINCINNATI, OH 45202** | | H | | | SECOND MORTGAGE 1710 FRANKLIN CHASE TERRACE, HENDERSON, NV 89012 | | | | | |
| | | | | | Value $          **184,000.00** | | | | **66,240.00** | **0.00** |
| Account No. **xxxxxxxxx3690** | | | | | Opened 11/19/04  Last Active 3/01/09 | | | | | |
| **US BANK ATTN: BANKRUPTCY DEPT. / MANAGING AGENT PO BOX 5227 CINCINNATI, OH 45202** | | H | | | FIRST MORTGAGE 1710 FRANKLIN CHASE TERRACE, HENDERSON, NV 89012 | | | | | |
| | | | | | Value $          **184,000.00** | | | | **169,834.00** | **52,074.00** |

<u>  0  </u>   continuation sheets attached

|  | Subtotal (Total of this page) | **990,203.00** | **314,403.00** |
|---|---|---|---|
|  | Total (Report on Summary of Schedules) | **990,203.00** | **314,403.00** |

# Exhibit E

B8 (Form 8) (12/08)

## United States Bankruptcy Court
### District of Nevada

In re  **IRWIN LEE BOMBA**
    **CLETA LOUISE BOMBA**
                                              Debtor(s)

Case No. _____

Chapter   **7**

### CHAPTER 7 INDIVIDUAL DEBTOR'S STATEMENT OF INTENTION

**PART A** - Debts secured by property of the estate. (Part A must be fully completed for EACH debt which is secured by property of the estate. Attach additional pages if necessary.)

| Property No. 1 | |
|---|---|
| **Creditor's Name:**<br>**EMERALD BAY HOA** | **Describe Property Securing Debt:**<br>TIMESHARE LOCATED AT PUEBLO BONITO EMERAL BAY<br>AT MAZATLAN, MEXICO |

Property will be (check one):
   ■Surrendered                            □Retained

If retaining the property, I intend to (check at least one):
   □Redeem the property
   □Reaffirm the debt
   □Other. Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is (check one):
   □Claimed as Exempt                        ■Not claimed as exempt

| Property No. 2 | |
|---|---|
| **Creditor's Name:**<br>**ONEWEST BANK** | **Describe Property Securing Debt:**<br>948 SAN EDUARDO AVENUE, HENDERSON, NV  89002 |

Property will be (check one):
   ■Surrendered                            □Retained

If retaining the property, I intend to (check at least one):
   □Redeem the property
   □Reaffirm the debt
   □Other. Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is (check one):
   □Claimed as Exempt                        ■Not claimed as exempt

B8 (Form 8) (12/08)                                                                                                Page 2

| Property No. 3 | |
|---|---|
| **Creditor's Name:**<br>**US BANK** | **Describe Property Securing Debt:**<br>**1710 FRANKLIN CHASE TERRACE, HENDERSON, NV 89012** |

Property will be (check one):
  ■ Surrendered                              ☐ Retained

If retaining the property, I intend to (check at least one):
  ☐ Redeem the property
  ☐ Reaffirm the debt
  ☐ Other. Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is (check one):
  ☐ Claimed as Exempt                        ■ Not claimed as exempt

| Property No. 4 | |
|---|---|
| **Creditor's Name:**<br>**US BANK** | **Describe Property Securing Debt:**<br>**1710 FRANKLIN CHASE TERRACE, HENDERSON, NV 89012** |

Property will be (check one):
  ■ Surrendered                              ☐ Retained

If retaining the property, I intend to (check at least one):
  ☐ Redeem the property
  ☐ Reaffirm the debt
  ☐ Other. Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is (check one):
  ☐ Claimed as Exempt                        ■ Not claimed as exempt

**PART B** - Personal property subject to unexpired leases. (All three columns of Part B must be completed for each unexpired lease. Attach additional pages if necessary.)

| Property No. 1 | | |
|---|---|---|
| **Lessor's Name:**<br>**ADT SECURITY** | **Describe Leased Property:**<br>**ALARM SYSTEM** | Lease will be Assumed pursuant to 11 U.S.C. § 365(p)(2):<br>☐ YES                ■ NO |

**I declare under penalty of perjury that the above indicates my intention as to any property of my estate securing a debt and/or personal property subject to an unexpired lease.**

Date _April 21, 2010_            Signature   **/s/ IRWIN LEE BOMBA**
                                             **IRWIN LEE BOMBA**
                                             Debtor

Date _April 21, 2010_            Signature   **/s/ CLETA LOUISE BOMBA**
                                             **CLETA LOUISE BOMBA**
                                             Joint Debtor

1

2

3

4

5

6   Michael R. Brooks, Esq.                    Electronically lodged
    Nevada Bar No. 7287
7   Rebecca P. Kern, Esq.
    Nevada Bar No. 9079
8   BROOKS BAUER LLP
    300 S. 4th Street, Suite 815
9   Las Vegas, Nevada 89101
    (702) 851-1191
10  Attorneys for *IndyMac Bank, FSB*

11              **UNITED STATES BANKRUPTCY COURT**

12                     **DISTRICT OF NEVADA**

13

14                                   )  Case No. 10-17047-lbr
        In re                        )  Chapter   7
15                                   )
                                     )
16      IRWIN LEE BOMBA,             )  Date:  June 7, 2010
        CLETA LOUISE BOMBA,         )  Time:  10:00 a.m.
17                                   )
                                     )
        Debtors.                     )
18  _____)

19

20          **[PROPOSED] ORDER TERMINATING THE AUTOMATIC STAY**

21          The Motion for Relief having been properly served, with no opposition filed herein, and

    the Court makes its Order as follows:
22

23          IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Automatic Stay in

    the above-entitled Bankruptcy case is hereby terminated as to the Debtor and the Trustee in favor
24
    of Secured Creditor, IndyMac Bank, FSB, as it pertains to the following property
25
    generally described as: 948 San Eduardo Avenue, Henderson, Nevada 89015.
26
            IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Secured Creditor shall
27
    provide to Debtor a minimum of seven (7) days Notice of the date, time and place of sale.
28

P:\Bankruptcy Forms\BK Real Property Pleadings\Bomba Order.docx

BROOKS BAUER LLP
300 S. FOURTH STREET, SUITE 815, LAS VEGAS, NV 89101
TELEPHONE: (702) 851-1191  FAX: (702) 851-1198

1

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the secured claim filed

2

by Secured Creditor is deemed to be withdrawn, and Secured Creditor may file an amended Proof

3

of Claim for any deficiency remaining after disposition of the property.

4

5

Submitted by:

6

BROOKS BAUER LLP

7

8

*/s/Michael R. Brooks, Esq.*
Michael R. Brooks, Esq., #7287

9

300 S. 4th Street, Suite 815
Las Vegas, Nevada 89101

10

Attorneys for Secured Creditor

11

## **ALTERNATIVE METHOD re: RULE 9021:**

12

In accordance with LR 9021, counsel submitting this document certifies as follows

13

(check one):

14

____ The court has waived the requirement of approval under LR 9021.

15

__X__ This is a chapter 7 or 13 case, and either with the motion, or at the hearing, I

16

have delivered a copy of this proposed order to all counsel who appeared at the
hearing, any unrepresented parties who appeared at the hearing, and each has

17

approved or disapproved the order, or failed to respond, as indicated below [list
each party and whether the party has approved, disapproved, or failed to respond

18

to the document]:

19

                                              Date Served        Result
                                              05/07/10

20

ZACHARIAH LARSON

21

LARSON & STEPHENS
810 S. CASINO CENTER BLVD., STE 104

22

LAS VEGAS, NEVADA 89101

23

YVETTER WEINSTEIN              05/07/10

24

6450 SPRING MOUNTAIN ROAD #14
LAS VEGAS, NEVADA 89146

25

26

27

28

BROOKS BAUER LLP
300 S. FOURTH STREET, SUITE 815, LAS VEGAS, NV 89101
TELEPHONE: (702) 851-1191 FAX: (702) 851-1198

P:\Bankruptcy Forms\BK Real Property Pleadings\Bomba Order.docx

1      \_\_\_ This is a chapter 9, 11, or 15 case, and I have delivered a copy of this

2  proposed order to all counsel who appeared at the hearing, any unrepresented

3  parties who appeared at the hearing, and each has approved or disapproved the

   order, or failed to respond, as indicated below [list each party and whether the

   party has approved, disapproved, or failed to respond to the document]:

4

5      \_\_\_ I certify that I have served a copy of this order with the motion, and no

   parties appeared or filed written objections.

6                                   BROOKS BAUER LLP

7

8                                    */s/Jill M. Sallade*

                                     *An Employee of Brooks Bauer LLP*

9

10

**BROOKS BAUER LLP**
300 S. FOURTH STREET, SUITE 815, LAS VEGAS, NV 89101
TELEPHONE: (702) 851-1191  FAX: (702) 851-1198

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28